*Execution Version*

## AMENDMENT NO. 7 TO CREDIT AGREEMENT AND LIMITED WAIVER

THIS AMENDMENT NO. 7 TO CREDIT AGREEMENT AND LIMITED WAIVER dated as of December 27, 2023 (this "Amendment"), is among UNCLE NEAREST, INC., a Delaware corporation (the "Company"), NEAREST GREEN DISTILLERY, INC., a Delaware corporation ("Distillery"), UNCLE NEAREST REAL ESTATE HOLDINGS, LLC, a Tennessee limited liability company (together with the Company and Distillery, collectively, the "Borrowers" and each, a "Borrower"), FARM CREDIT MID-AMERICA, PCA, in its capacity as administrative agent (in such capacity, the "Administrative Agent"), and each of the Lenders (as defined below) party hereto.

### RECITALS:

A.      The Borrowers, the lenders party thereto (collectively, the "Lenders") and the Administrative Agent have entered into that certain Credit Agreement dated as of July 22, 2022 (as amended, supplemented or otherwise modified prior to the date hereof, the "Existing Credit Agreement"). Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Credit Agreement (as defined below).

B.      The Borrowers have requested certain amendments to the Existing Credit Agreement as more particularly set forth below and waivers of certain defaults as set forth in more detail below.

C.      Subject to the terms and conditions set forth below, the Lenders party hereto have agreed to make such amendments and grant such waivers.

In furtherance of the foregoing, the parties agree as follows:

**Section 1.      LIMITED WAIVER.**  Pursuant to Section 10.1 of the Credit Agreement and subject to the terms and conditions set forth herein and in reliance upon the representations and warranties set forth herein, each Lender party hereto hereby waives:

(a)      the Event of Default that has occurred prior to the date hereof under Section 8.1(b) of the Existing Credit Agreement due to the Borrowers' failure to deliver the audited consolidated and consolidating balance sheet of the Company and its Subsidiaries as at the end of the fiscal year ended December 31, 2022 (the "2022 Audited Balance Sheet") by the date required by Section 6.1(a) of the Existing Credit Agreement and extended pursuant to that certain Amendment No. 6 to Credit Agreement and Limited Waiver dated as of July 26, 2023 by and among the Borrowers, the Administrative Agent and the Lenders party thereto, so long as the 2022 Audited Balance Sheet is delivered pursuant to the terms of the Credit Agreement on or prior to December 31, 2023 (it being acknowledged and agreed that the failure of the Borrowers to do so shall be an immediate Event of Default);

(b)      each Event of Default that has occurred prior to the date hereof under Section 8.1(a) of the Existing Credit Agreement due to the Borrowers' failure to timely make interest payments required by Section 2.6(c) of the Existing Credit Agreement on November 1, 2023; and

(c)      each Event of Default that has occurred prior to the date hereof under Section 8.1(b) of the Existing Credit Agreement due to the Borrowers' failure to maintain Consolidated Tangible Net Worth equal to or greater than $100,000,000 for the period beginning on October 31, 2023 through and including the date hereof, as required by Section 7.11(a) of the Existing Credit Agreement.

EXHIBIT
8

181936271

**Section 2.**    **AMENDMENT(S).**  Subject to the terms and conditions set forth herein and in reliance upon the representations and warranties set forth herein, the Existing Credit Agreement is hereby amended as follows (as so amended, the "Credit Agreement"):

(a)    The proviso in Section 6.1(a) of the Existing Credit Agreement is hereby amended and restated in its entirety to read as follows:

"provided that, with respect to the financial statements to be delivered hereunder for the fiscal year ending December 31, 2022, the balance sheet for such fiscal year and the related statements of income or operations, changes in shareholders' equity and cash flows for such fiscal year may be reviewed;"

(b)    The table in Section 7.11(a) of the Existing Credit Agreement is hereby amended and restated in its entirety to read as follows:

| Period | Minimum Consolidated Tangible Net Worth |
|---|---|
| Closing Date through December 30, 2022 | $58,000,000 |
| December 31, 2022 through December 30, 2023 | $66,000,000 |
| December 31, 2023 through December 30, 2024 | $100,000,000 |
| December 31, 2024 through December 30, 2025 | $122,000,000 |
| December 31, 2025 and thereafter | $146,000,000 |

(c)    Exhibit C (Compliance Certificate) to the Existing Credit Agreement is hereby amended and restated in its entirety to read in the form attached hereto as Schedule 1.

**Section 3.**    **CONDITIONS PRECEDENT.**  The parties hereto agree that this Amendment, the limited waiver(s) set forth in Section 1 above and the amendment(s) set forth in Section 2 above shall become effective upon receipt by the Administrative Agent of a counterpart of this Amendment duly executed and delivered by each Borrower, the Administrative Agent and each Lender.

**Section 4.**    **REPRESENTATIONS AND WARRANTIES.**    In order to induce the Administrative Agent and the Lenders party hereto to enter into this Amendment, each Borrower represents and warrants to the Administrative Agent and the Lenders party hereto as follows:

(a)    The representations and warranties of each Borrower contained in Article V of the Credit Agreement and in each other Loan Document are true and correct in all material respects (or, in the case of any such representation and warranty that is subject to materiality or Material Adverse Effect qualifications, in all respects) on and as of the date hereof, after giving effect to this Amendment, except to the extent that such representations and warranties specifically refer to an earlier date, in which case they are true and correct in all material respects (or, in the case of any such representation and warranty that is subject to materiality or Material Adverse Effect qualifications, in all respects) as of such earlier date;

(b)    Since December 31, 2021, there has been no event or circumstance, either individually or in the aggregate, that has had or could reasonably be expected to have a Material Adverse Effect;

(c)    No Default exists on the date hereof immediately prior to or after giving effect to this Amendment and the amendment(s) contemplated hereby, other than as expressly waived hereunder.

2

(d)       This Amendment has been duly authorized, executed and delivered by it and constitutes its legal, valid and binding obligation.

**Section 5.        MISCELLANEOUS.**

(a)       **Ratification and Confirmation of Loan Documents**.  Each Borrower hereby consents, acknowledges and agrees to the amendment(s) and limited waiver(s) set forth herein and hereby confirms and ratifies in all respects the Loan Documents to which such Borrower is a party (including without limitation, the continuation of its payment and performance obligations thereunder and the continuation and extension of the liens granted under the Collateral Documents to secure the Obligations), in each case upon and after the effectiveness of the amendment(s) and limited waiver(s) contemplated hereby.

(b)       **Fees and Expenses**.  The Borrowers shall pay all reasonable out-of-pocket expenses incurred by the Administrative Agent and its Affiliates (including the reasonable fees, charges and disbursements of counsel for the Administrative Agent) in connection with the preparation, negotiation, execution and delivery of this Amendment and any other documents prepared in connection herewith.

(c)       **Governing Law; Waiver of Jury Trial**.  This Amendment shall be governed by, and construed in accordance with, the laws of the State of New York, and shall be further subject to the provisions of Sections 10.11 and 10.12 of the Credit Agreement.

(d)       **Counterparts**.  This Amendment may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract.  Delivery of an executed counterpart of a signature page of this Amendment by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Amendment.

(e)       **Entire Agreement**.  This Amendment, together with all the Loan Documents (collectively, the "Relevant Documents"), sets forth the entire understanding and agreement of the parties hereto in relation to the subject matter hereof and supersedes any prior negotiations and agreements among the parties relating to such subject matter.  No promise, condition, representation or warranty, express or implied, not set forth in the Relevant Documents shall bind any party hereto, and no such party has relied on any such promise, condition, representation or warranty.  Each of the parties hereto acknowledges that, except as otherwise expressly stated in the Relevant Documents, no representations, warranties or commitments, express or implied, have been made by any party to the other.  None of the terms or conditions of this Amendment may be changed, modified, waived or canceled orally or otherwise except in a writing and in accordance with Section 10.1 of the Credit Agreement.  This Amendment is a Loan Document.

(f)       **Severability**.  If any provision of this Amendment is held to be illegal, invalid or unenforceable, (i) the legality, validity and enforceability of the remaining provisions of this Amendment shall not be affected or impaired thereby and (ii) the parties shall endeavor in good faith negotiations to replace the illegal, invalid or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the illegal, invalid or unenforceable provisions.  The invalidity of a provision in a particular jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

181936271

(g)    **Successors and Assigns**.    This Amendment shall be binding upon and inure to the benefit of each party hereto and their respective successors and assigns (subject to <u>Section 10.6</u> of the Credit Agreement).

*[Remainder of Page Intentionally Left Blank; Signature Pages Follow]*

4

IN WITNESS WHEREOF, the parties hereto have caused this Amendment No. 7 to Credit Agreement and Limited Waiver to be executed by their duly authorized officers, all as of the date and year first written above.

**BORROWERS:**

**UNCLE NEAREST, INC.**

By: _____
Name:   Fawn Weaver
Title:    President and Secretary

**NEAREST GREEN DISTILLERY, INC.**

By: _____
Name:   Fawn Weaver
Title:    President and Secretary

**UNCLE NEAREST REAL ESTATE HOLDINGS, LLC**

By:      Uncle Nearest, Inc., its Member

    By: _____
    Name:   Fawn Weaver
    Title:    President and Secretary

AMENDMENT NO. 7 TO CREDIT AGREEMENT AND LIMITED WAIVER
Signature Page

<u>**ADMINISTRATIVE AGENT / LENDERS:**</u>

**FARM CREDIT MID-AMERICA, PCA,**
as Administrative Agent and a Lender

By: _____

Name:  Jonathan Boyce
Title:   Financial Officer

AMENDMENT NO. 7 TO CREDIT AGREEMENT AND LIMITED WAIVER
Signature Page

181936271

## Schedule 1

Amended Exhibit C to Credit Agreement

*See attached.*

*EXHIBIT C*

**FORM OF COMPLIANCE CERTIFICATE**

Financial Statement Date: _____, _____

To: Farm Credit Mid-America, PCA, as Administrative Agent
     The Lenders party to the Credit Agreement referenced below

Ladies and Gentlemen:

Reference is made to that certain Credit Agreement, dated as of July 22, 2022 (as amended, restated, extended, supplemented or otherwise modified in writing from time to time, the "Credit Agreement;" the terms defined therein being used herein as therein defined), among UNCLE NEAREST, INC., a Delaware corporation (the "Company"), NEAREST GREEN DISTILLERY, INC., a Delaware corporation ("Distillery"), UNCLE NEAREST REAL ESTATE HOLDINGS, LLC, a Tennessee limited liability company ("RE Holdings"), each other Borrower party thereto (together with the Company, Distillery and RE Holdings, collectively, the "Borrowers" and each, a "Borrower"), each lender from time to time party thereto (the "Lenders") and FARM CREDIT MID-AMERICA, PCA, as administrative agent (in such capacity, the "Administrative Agent").

The undersigned hereby certifies as of the date hereof that he/she is the chief executive officer, president, chief financial officer, treasurer, controller or director of finance of the Company, and that, on behalf of the Company, in such capacity, he/she is authorized to execute and deliver this Compliance Certificate to the Administrative Agent and the Lenders on the behalf of the Borrowers, and that:

*[Use following paragraph 1 for fiscal **year-end** financial statements]*

1.      The Company has delivered:

(a)      the year-end audited financial statements required by Section 6.1(a) of the Credit Agreement for the fiscal year of the Company and its Subsidiaries ended as of the above date, audited by an independent certified public accountant and accompanied by a report and opinion of such accountant, as required by such Section.[1]  Such consolidated financial statements fairly present in all material respects the financial condition, results of operations, and cash flows of the Company and its Subsidiaries in accordance with GAAP and such consolidating statements are certified to the effect that such statements are fairly stated in all material respects when considered in relation to the consolidated financial statements of the Company and its Subsidiaries.

(b)      the annual business plan and budget of the Company and its Subsidiaries on a consolidated basis, including forecasts prepared by management of the Company, presented on an annual basis for the current fiscal year as required by Section 6.1(c) of the Credit Agreement.

---

[1] Notwithstanding anything to the contrary herein, with respect to the financial statements to be delivered pursuant to Section 6.1(a) of the Credit Agreement for the fiscal year ending December 31, 2022, the balance sheet for such fiscal year shall be audited and the related statements of income and operations, changes in shareholders' equity and cash flows for such fiscal year may be reviewed.

C-2
Form of Compliance Certificate

161275834

*[Use following paragraph 1 for calendar **month-end** financial statements]*

1.        The Company has delivered the unaudited consolidated and consolidating financial statements required by Section 6.1(b) of the Credit Agreement for the calendar month ended as of the above date.  Such consolidated financial statements fairly present in all material respects the financial condition, results of operations, and cash flows of the Company and its Subsidiaries in accordance with GAAP, subject only to normal year-end adjustments and the absence of footnotes and such consolidating statements are certified to the effect that such statements are fairly stated in all material respects when considered in relation to the consolidated financial statements of the Company and its Subsidiaries.

2.        The undersigned has reviewed and is familiar with the terms of the Credit Agreement and has made, or has caused to be made under his/her supervision, a review of the transactions and condition (financial or otherwise) of the Company and its Subsidiaries during the accounting period covered by such financial statements.

3.        The financial covenant analyses and information set forth on Schedules 1 and 2 attached hereto are true and accurate on and as of the date of this Compliance Certificate.

4.        Attached hereto as Schedule 3 is a copy of management's customary discussion and analysis with respect to such financial statements.

5.        Attached hereto as Schedule 4 are supplements to Schedules 9(j) and 9(k) of the Security Agreement with respect to Patents, Trademarks and Copyrights issued and/or registered with the United States Patent and Trademark Office or United States Copyright Office, as the case may be, since the Closing Date or the most recent date Schedules 9(j) and 9(k) of the Security Agreement, as applicable, has been updated, which are necessary to keep the representations and warranties in Sections 9(j) and 9(k) of the Security Agreement true and complete.

6.        A review of the activities of the Company and its Subsidiaries during such fiscal period has been made under the supervision of the undersigned with a view to determining whether during such fiscal period the Company and its Subsidiaries performed and observed all of their respective Obligations under the Loan Documents, and

*[select one:]*

**[during such fiscal period, each of Company and its Subsidiaries performed and observed each covenant and agreement of the Loan Documents applicable to it, and no Default has occurred and is continuing.]**

***--or--***

**[during such fiscal period, the following covenants or agreements have not been performed or observed and the following is a list of each such Default and its nature and status:]**

*[signature page follows]*

C-3
Form of Compliance Certificate

161275834

*IN WITNESS WHEREOF,* the undersigned has executed, in his capacity as a Senior Officer and not in his individual capacity, this Compliance Certificate as of _____, _____.

**UNCLE NEAREST, INC.**

By:_____

Name:_____

Title: _____

C-4
Form of Compliance Certificate

161275834

For the Calendar Month/Fiscal Year ended _____("Statement Date")

**SCHEDULE 1**
**to the Compliance Certificate**

I.    **Section 7.11(a) – Consolidated Tangible Net Worth.**

    A.    Shareholders' Equity of the Company and its Subsidiaries on the
Statement Date:    $_____

    B.    Intangible Assets of the Company and its Subsidiaries on the
Statement Date:    $_____

    C.    Consolidated Tangible Net Worth

       (Line I.A – Line I.B):    $_____

    D.    In compliance?    [Yes][No]

    E.    At any time since the delivery of the most recent Compliance
Certificate, has the Consolidated Tangible Net Worth been less
than the applicable minimum Consolidated Tangible Net Worth
set forth below?    [Yes][No]

| Period | Minimum Consolidated Tangible Net Worth |
|---|---|
| Closing Date through December 30, 2022 | $58,000,000 |
| December 31, 2022 through December 30, 2023 | $66,000,000 |
| December 31, 2023 through December 30, 2024 | $100,000,000 |
| December 31, 2024 through December 30, 2025 | $122,000,000 |
| December 31, 2025 and thereafter | $146,000,000 |

II.    **Section 7.11(b) – Consolidated Net Income.[2]**

Consolidated Net Income for the calendar month ending on the
       Statement Date:    $_____

ï    *Minimum permitted:*    *$1.00*

---

[2] To be calculated on a monthly basis commencing with the calendar month ending August 31, 2022.

C-5
Form of Compliance Certificate

161275834

**SCHEDULE 3
to the Compliance Certificate**

**Management's Discussion and Analysis**

*To be attached*

C-6
Form of Compliance Certificate

**SCHEDULE 4**
**to the Compliance Certificate**

**Supplements to Schedules 9(j) and 9(k) to the Security Agreement**

*To be attached.*

C-6
Form of Compliance Certificate