**FARM CREDIT MID-AMERICA, PCA**
**12501 Lakefront Place**
**Louisville, KY 40299**

<u>**VIA FEDEX AND ELECTRONIC MAIL**</u>

November 22, 2024

Uncle Nearest, Inc.
3125 US 231 N
Shelbyville, TN 37160
Attn: Fawn Weaver, Chief Executive Officer (<u>fawn.weaver@unclenearest.com</u>)
Keith Weaver, Chief Operative Officer (<u>keith.weaver@unclenearest.com</u>)
Felicia Gallagher, SVP Finance and Planning (<u>felicia.gallagher@unclenearest.com</u>)

**Re:**    That certain Credit Agreement dated as of July 22, 2022 (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Credit Agreement</u>") among UNCLE NEAREST, INC., a Delaware corporation (the "<u>Company</u>"), NEAREST GREEN DISTILLERY, INC., a Delaware corporation ("<u>Distillery</u>"), UNCLE NEAREST REAL ESTATE HOLDINGS, LLC, a Tennessee limited liability company ("<u>RE Holdings</u>" and, together with the Company and Distillery, collectively, the "<u>Borrowers</u>" and each, a "<u>Borrower</u>"), FARM CREDIT MID-AMERICA, PCA, in its capacity as administrative agent (in such capacity, the "<u>Administrative Agent</u>"), and each of the lenders party thereto (collectively, the "<u>Lenders</u>").  Capitalized terms used herein without definition shall have the meanings assigned to them in the Credit Agreement.

Ladies and Gentlemen:

I am writing with respect to (i) that certain letter to the Borrower from the Administrative Agent dated November 5, 2024 (the "<u>November 5 Letter</u>"), (ii) that certain letter to the Administrative Agent dated November 13, 2024, regarding "Response to Notice of Distressed Loan and Restructuring Opportunity", and (iii) that certain letter to the Administrative Agent dated November 13, 2024, regarding "Credit Agreement Dated as of July 22, 2022 (the "Credit Agreement")" (the letters in (ii) and (iii), the "<u>Response Letters</u>").[1]

The Administrative Agent appreciates the communication with the Borrowers and also looks forward to a feasible, hopefully consensual, restructuring that provides a path forward for all parties involved.  As you are aware, the Administrative Agent has repeatedly requested the inventory reconciliation and a meeting and has attempted to engage in productive restructuring negotiations with the Borrowers without any progress.

To negotiate and effectuate a feasible path forward, the Borrowers must retain the services of ███ ██████, a Partner and Managing Director with ████ ████████, to act as chief restructuring officer (the "<u>CRO</u>") of each Borrower, at the Borrowers' cost and expense, pursuant to terms and conditions

---

[1] While it is not clear whether the Response Letters were sent on behalf of the Borrowers or Fawn Weaver and Keith Weaver, for purposes of this letter it is assumed that the Response Letters were sent on behalf of the Borrowers. Though the Response Letters note that each was sent via UPS and electronic mail, they were delivered via USPS on Friday, November 15, 2024, and none of the indicated electronic mail recipients received copies of the Response Letters through electronic mail.

> **EXHIBIT**
> **21**

196879063_3

acceptable to the Administrative Agent in its sole and absolute discretion and pursuant to an engagement letter substantially in the form enclosed herewith (the "CRO Engagement Letter"). The CRO has a wealth of experience in distressed situations. The engagement of the CRO will permit the Borrowers and the Administrative Agent to meaningfully engage in restructuring negotiations and chart a plan that is in line with the Borrowers' current financial position, including, without limitation, addressing the inventory reconciliation referenced in the November 5 Letter. The CRO and his team are available and would like to discuss the engagement with the Borrowers as soon as possible. The contact information for the CRO is set forth in the enclosed CRO Engagement Letter. Please contact the CRO as soon as possible and provide an executed copy of the CRO Engagement Letter to the Administrative Agent on or before **Tuesday, November 26, 2024**. The Administrative Agent would expect meaningful engagement with the CRO and any failure to do so after the engagement commences may result in the Administrative Agent's election to enforce its remedies.

Neither the failure of the Administrative Agent or any Lender to exercise any other right or remedy under the Loan Documents with respect to any Event of Default, including, without limitation the Specified Events of Default (as such term is defined in the November 5 Letter), nor any forbearance or delay in exercising any such right or remedy, shall constitute a waiver of such right or remedy or any other right or remedy available under the Loan Documents or applicable Law. Any continued funding of Loans shall be at the sole discretion of the Administrative Agent and the Lenders and, if funded, shall not constitute a waiver of any Event of Default, including, without limitation, the Specified Events of Default. Without limitation of the foregoing, each of the Administrative Agent and the Lenders expressly reserves and continues to reserve all of its rights, powers, privileges and remedies under the Credit Agreement, the other Loan Documents and/or applicable Law and/or in equity in respect of any and all Defaults or Events of Default, including, without limitation, the Specified Events of Default, under the Credit Agreement and the other Loan Documents. The Administrative Agent and the Lenders may exercise their respective rights, powers, privileges, and remedies at any time in their sole and absolute discretion without further notice, except as may be required by the applicable Loan Documents or applicable Law. The Administrative Agent may from time to time send loan statements and/or invoices to the Borrowers, which such statements and invoices are generated for the Borrowers' information and convenience only, and do not waive, amend or alter in any way the Borrowers' obligations, or the Administrative Agent or any Lender's rights, under the Loan Documents. The Administrative Agent may accept and negotiate any payment or check, including payments made by charging a deposit account(s), without prejudice to its rights to receive the balance of all remaining sums due under the Loan Documents, including any default interest and other charges that may be due under thereunder. Any partial payment received by the Administrative Agent or any Lender will not constitute an agreement to amend or modify any Loan Document, decelerate any Obligations (if accelerated), an accord and satisfaction, or an agreement by the Administrative Agent or any Lender to accept a lesser amount as payment in full of sums owed. The Administrative Agent's or any Lender's acceptance of any endorsement or statement on any check evidencing a payment or letter accompanying a payment will not be deemed to be an accord and satisfaction.

No oral representations or course of dealing on the part of the Administrative Agent or any Lender or any of their respective officers, employees, or agents, and no failure or delay by the Administrative Agent or any Lender with respect to the exercise of any right, power, privilege, or remedy under any of the Loan Documents or applicable law, shall operate as a waiver thereof, and the single or partial exercise of any such right, power, privilege, or remedy shall not preclude any later exercise of the same or other right, power, privilege, or remedy.

[Signature page follows.]

Docusign Envelope ID: 78373C24-8323-4D14-8860-3007CDDE1CAA

Very truly yours,

FARM CREDIT MID-AMERICA, PCA, as Administrative Agent

By: _____
Name:   Brian Klatt
Title:   Managing Director Food and Agribusiness




cc:      Fogel & Potamianos LLP
         4100 W. Alameda Ave.
         Suite 300
         Burbank, CA 91505
         Attention: Jerome Fogel
         Email: jfogel@fpgeneralcounsel.com

         McGuireWoods LLP
         Steven Ritchie (sritchie@mcguirewoods.com)
         Demetra Liggins (dliggins@mcguirewoods.com)
         Alexandra Shipley (ashipley@mcguirewoods.com)



















